# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

KEVIN BRADFORD,          )
                                  )

    Plaintiff,              )
                                  )

v.                          )         Case No. CIV-15-606-R
                                  )

JOHN CURRID, et al.       )
                                  )

    Defendants.         )

## REPORT AND RECOMMENDATION

Plaintiff, appearing *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983, alleging a violation of his constitutional rights. This matter has been referred to the undersigned magistrate judge to conduct any necessary hearings, including evidentiary hearings, for the entry of appropriate orders as to non-dispositive matters, and for the preparation and submission of proposed findings and recommendations as to dispositive matters as referenced in 28 U.S.C. § 636(b)(1)(B) and (C).

The sole remaining Defendant, Chris Hopingardner, has filed a Motion to Dismiss. The Plaintiff has filed a Motion for Leave to File an Amended Complaint. Upon review, it is recommended that: (1) Defendant's motion be converted to a Motion for Summary Judgment and that Motion be **GRANTED** and (2) Plaintiff's Motion for Leave to File an Amended Complaint be **DENIED**.

## I.    BACKGROUND

On October 23, 2013, Officer Hopingardner was part of a high-speed chase involving Plaintiff and Officer John Currid and Greer County Medic Faustino Medrano

who were together in a separate vehicle. According to Plaintiff's Amended Complaint (ECF No. 20), Officer Hopingardner intentionally collided his vehicle with Plaintiff's vehicle, ending the high-speed chase and causing injuries to Plaintiff's head, neck, back, hips, legs, and arms. Mr. Bradford contends that Officer Hopingardner's actions were excessive, unreasonable, and malicious, in violation of the Fourth Amendment.

## II.  CONVERSION OF THE MOTION TO DISMISS

Defendant Hopingardner has filed a Motion to Dismiss under Rule 12(b)(6). (ECF No. 34).[1] By order of this Court, the City of Mangum, Defendant's employer, prepared and filed a Special Report which contained various exhibits addressing Plaintiff's claims. (ECF No. 33). *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978). In the Motion to Dismiss, Defendant relies on documents which are part of the Special Report. Likewise, Plaintiff attaches exhibits to his Amended Complaint and Response to Defendant's Motion to Dismiss. (ECF Nos. 20 & 36).

"A 12(b)(6) motion must be converted to a motion for summary judgment if 'matters outside the pleading are presented to and not excluded by the court.'" *GFF Corporation v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384 (10th Cir. 1997). Typically, if the court decides to convert a Rule 12(b) motion to a Rule 56 motion for summary judgment, it must provide parties with notice of the conversion to avoid unfair surprise. *See Nichols v. United States*, 796 F.2d 361, 364 (10th Cir. 1986). But here, both parties have attached documents outside the pleadings, essentially inviting the

---

[1] Defendant argues dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction. But the Defendant has not stated why subject matter jurisdiction is lacking. Accordingly, the Court should not consider this argument.

Court to treat the motion to dismiss as a Motion for Summary Judgment. And in the Court's order directing prison officials to prepare and file the Special Report, the Court informed Plaintiff that:

> "[W]hen a dispositive motion is supported by affidavits and/or other documents, the party opposing the motion may not depend upon the mere allegations in his/her/their pleadings to counter it. The party opposing the motion must respond with counter affidavits and/or documents to set forth specific facts showing that there is a genuine issue of material fact to be litigated at the trial."

(ECF No. 22:3-4).

Under these circumstances, Plaintiff was aware that he needed to respond to the Motion to Dismiss with more than mere allegations, and in fact, he did so. As a result, conversion to a Motion for Summary judgment is proper, but no formal notice of conversion is required. *Id. See Arnold v. Air Midwest, Inc.,* 100 F.3d 857, 859 n. 2 (10th Cir. 1996) (explaining that a party who "submitted material beyond the pleadings in opposition to defendants' motion [to dismiss] . . . is scarcely in a position to claim unfair surprise or inequity").

## III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Once a moving party shows entitlement to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party must

present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see also Celotex*, 477 U.S. at 324 (quoting Rule 56(e) . . . which requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by [other sworn evidence], designate 'specific facts showing that there is a genuine issue for trial.'"). In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

To defeat a Motion for Summary Judgment, evidence must be based on more than mere speculation, conjecture or surmise. *Rice v. United States*, 166 F.3d 1088, 1091-1092 (10th Cir. 1999). Moreover, the existence of a factual issue does not preclude entry of summary judgment where there is no evidence to support a dispute on that issue or the evidence is so one-sided that no reasonable juror could find for the other side. *True v. United States*, 190 F.3d 1165, 1177 (10th Cir. 1999). Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir. 1995). Additionally, when a party fails to properly address another party's assertion of fact as required by Rule 56(c), the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

In evaluating a Motion for Summary Judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable

inferences from those facts in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## IV.   NO EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT

Plaintiff alleges that Defendant Hopingardner violated the Fourth Amendment by using excessive force to effectuate Plaintiff's seizure. According to Mr. Bradford, Defendant intentionally placed his vehicle in the path of Plaintiff's oncoming vehicle to cause a collision and end a high-speed chase which ultimately led to Plaintiff's arrest. The evidence demonstrates otherwise and Defendant Hopingardner is entitled to summary judgment.

### A.   Standard for Evaluating Claims of Excessive Force

To prove a claim of excessive force, a plaintiff must prove that a "seizure" occurred and that the seizure was "unreasonable." *Brower v. Cty. of Inyo*, 489 U.S. 593, 599 (1989). To effectuate a "seizure" in terms of the Fourth Amendment, the detention or taking must be willful. *Id.* at 596. A Fourth Amendment seizure does not occur despite the desire to terminate an individual's freedom unless there is a governmental termination of freedom of movement "*through means intentionally applied.*" *Id.* at 596-97 (emphasis in original).

Determining whether the force used to effect a particular seizure is "reasonable" under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case and an examination of the totality of the circumstances. *Graham v. Connor*, 490 U.S. 386, 396 (1989). The factors to be examined include: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the

safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* Finally, the "reasonableness" inquiry in an excessive force case is objective: the question is whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397.

### B.     No Violation of the Fourth Amendment

As stated, a violation of the Fourth Amendment for excessive force requires an intentional and unreasonable seizure. Here, the evidence proves that Officer Hopingardner did not act intentionally when he collided with Plaintiff's vehicle and ended the high-speed chase. But even if he had, his actions would be considered reasonable under the totality of the circumstances.

Statements given by Mr. Medrano and Officers Hopingardner and Currid detailed the events which preceded the collision at issue. Officer Currid had attempted to stop Plaintiff's vehicle because Plaintiff was speeding and his vehicle had a broken tail light and an expired tag. (ECF No. 33-2:1). Despite Officer Currid's lights and siren, Plaintiff failed to stop and instead increased his speed. (ECF No. 33-2). A high-speed chase ensued with Plaintiff turning down various streets, alleys, and a wooded field. (ECF No. 33-2:1; 33-3:5).

While off-duty, Officer Hopingardner overheard radio traffic from Officer Currid which stated that he was in pursuit of a vehicle. (ECF No. 33-3:3). In an effort to assist Officer Currid, Officer Hopingardner joined the pursuit in his personal vehicle. Officer Hopingardner followed the pursuit through various streets, and at one point he was

heading eastbound on Garfield, a street which was north of, but which paralleled Hayes Street, where Officer Currid and Mr. Medrano were also proceeding eastbound, following Mr. Bradford. (ECF No. 33-3:3). During the parallel eastbound pursuit, Officer Currid radioed that Plaintiff had turned southbound on an alley street. (ECF No. 33-1:1, 3; 33-3:3). Officer Hopingardner entered the intersection of the alley and Garfield and was preparing to turn south on the alley per the radio transmission, but instead was met with Plaintiff's vehicle, heading straight for him. (ECF No. 33-3:3). Officer Currid had mistakenly radioed that the pursuit had turned south when in fact Plaintiff had turned north. (ECF No. 33-1:1, 3). Officer Hopingardner attempted to avoid a collision but was unable to do so, and Plaintiff's vehicle struck the passenger's side of Officer Hopingardner's vehicle. (ECF No. 33-3:3).

In *Brower v. Cty. of Inyo*, 489 U.S. 593 (1989), the Court analyzed circumstances involving the death of plaintiffs' decedent who was killed when the car he was driving struck a police roadblock. The Court held that the use of a roadblock constituted a seizure within the meaning of the Fourth Amendment because "a roadblock is not just a significant show of authority to induce a voluntary stop, but is designed to produce a stop by physical impact if voluntary compliance does not occur." *Id.* at 598. However, the court specifically stated: "a Fourth Amendment seizure does not occur . . . whenever there is a governmentally caused and governmentally desired termination of an individual's freedom (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* at 596-97. By means of an example, the Court stated that no seizure

occurs, for purposes of the Fourth Amendment, when a suspect loses control of his car during a high-speed police pursuit and crashes. *Id.* at 597.

In the instant case, the issue of whether a "seizure" occurred turns on whether Officer Hopingardner had acted intentionally in placing his vehicle in Plaintiff's pathway, thereby causing the crash. The undisputed facts demonstrate the lack of such intent. Officer Currid had mistakenly radioed that the pursuit was heading south, when in fact, the pursuit was heading north. When Officer Hopingardner reached the alley to proceed south, he was unexpectedly and unintentionally in the path of Mr. Bradford's oncoming vehicle. The evidence demonstrates that the crash which ensued was unavoidable and was not intended to be used by Officer Hopingardner as a roadblock to effectuate a seizure against Mr. Bradford. However, even if Officer Hopingardner had acted intentionally, Plaintiff must also prove that Officer Hopingardner had acted unreasonably, in light of the totality of the circumstances.

In determining whether a seizure is reasonable, the Court "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests allegedly justifying the intrusion." *Scott v. Harris*, 550 U.S. 372, 383 (2007) (internal citation and quotation marks omitted). In this analysis, the Court should consider three factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

In *Scott v. Harris*, the United States Supreme Court considered circumstances involving a high-speed chase wherein the respondent led several police officers on a high-speed chase up and down city streets, crossing the double line, running red lights, and nearly hitting other vehicles. *Scott*, at 379-80. Ultimately, an officer terminated the pursuit by applying his bumper to the rear of the respondent's vehicle, causing it to leave the road and crash and rendering the respondent a quadriplegic. *Id.* at 375. The issue in *Scott* was whether the seizure was reasonable. The Court answered affirmatively, noting the reckless circumstances which had preceded the crash. Ultimately, the Court held: "A police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Id.* at 386.

*Scott v. Harris* is controlling in the instant case. Here, statements from all three individuals involved in the chase indicate that Plaintiff was excessively speeding up and down city streets, with pedestrians present on the sides of the roadways, and through alleys and a wooded field. (ECF No. 33-2:1; 33-3:3, 5). Plaintiff posed an immediate threat to the safety of the individuals in the pursuit and other innocent bystanders on the city streets. Plaintiff's actions show that he was actively attempting to evade arrest and but for Officer Hopingardner's vehicle ending the pursuit, there is no indication that Plaintiff would have otherwise stopped. Under these circumstances, the Court should conclude that even if Officer Hopingardner had intentionally placed his vehicle into the

oncoming path of Plaintiff's vehicle, his actions were reasonable under *Scott* and did not violate the Fourth Amendment.

## V.    QUALIFIED IMMUNITY

As alleged by Defendant Hopingardner, the Court should also find that qualified immunity exempts the Defendant from liability.

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Groh v. Ramirez,* 540 U.S. 551, 567 (2004).

In *Saucier v. Katz*, 533 U.S. 194 (2000), the United States Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts have established a violation of a constitutional right. *Id.* at 201. Second, if a violation has occurred, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* A defendant is entitled to qualified immunity unless the official's conduct violated a clearly established constitutional right. *Id.* The Court has discretion

10

regarding which element to examine first. *See Estate of Booker v. Gomez*, 745 F.3d 405, 412 (10th Cir. 2014).

Here, under the first element of *Saucier*, the Court should conclude that Officer Hopingardner's conduct did not violate the Fourth Amendment, as discussed. Accordingly, the Court need not discuss whether the right was "clearly established" at the time that Officer Hopingardner acted, but instead conclude that he is entitled to qualified immunity.

## VI.    PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Mr. Bradford has filed a "Motion for Leave to File an Amended Complaint." (ECF No. 39). The basis of the motion is not substantive, but is merely to add a claim for punitive damages. Based on the contemporaneous recommendation for summary judgment to the Defendant, the Court should deny Plaintiff's request to amend.

## VII.    CONCLUSION AND RECOMMENDATION

The Court should conclude that Defendant Hopingardner did not use excessive force in violation of the Fourth Amendment by the unintentional and reasonable use of his vehicle which collided with Plaintiff's vehicle, thereby ending a high-speed chase. The absence of a Fourth Amendment violation entitles Defendant Hopingardner to qualified immunity as well. As a result, it is recommended that Defendant's Motion to Dismiss **(ECF No. 34)** which the undersigned has recommended be converted to a Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Leave to File an Amended Complaint **(ECF No. 39)** be **DENIED.** Additionally, in light of the foregoing recommendation, Plaintiff's Motion to Obtain Records in Forma Pauperis and Motion to

Appoint Counsel, contained in his document titled Plaintiff's Reply to Defendant's Opposition to Motion to Dismiss (ECF No. 41), should be **DENIED**.

## VIII.  NOTICE OF RIGHT TO OBJECT

Plaintiff The parties are hereby advised of their right to object to this Report and Recommendation. *See* 28 U.S.C. § 636. Any objection must be filed with the Clerk of the District Court by **June 27, 2016**. *See* 28 U.S.C. § 636(b)(1); and Fed. R. Civ. P. 72(b)(2). Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

## IX.  STATUS OF THE REFERRAL

This Report and Recommendation disposes of all issues currently referred to the undersigned magistrate judge in the captioned matter.

ENTERED on June 10, 2016.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE